UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 01 2018 ★

LONG ISLAND OFFICE

---------------------------------------------------------------x

JABRO FUNDING CORP.,

                  Plaintiff,

    -against-

CORIX BIOSCIENCE, INC. AND
MICHAEL OGBURN,

                  Defendants.

---------------------------------------------------------------x

Civil Action No.:

CV18 2569

FEUERSTEIN, J.

BROWN, M. J.

## COMPLAINT

Plaintiff, Jabro Funding Corp. ("Jabro or Plaintiff"), files this Complaint and alleges the following:

### I. SUMMARY

1.    Through this action, Jabro seeks to recover losses caused by Corix Bioscience, Inc. ("Defendant") and Michael Ogburn ("Ogburn") through their intentional and/or reckless misconduct, including compensatory and/or rescissory damages, which losses may only be avoided if the relief described herein below is granted. That Ogburn was at all times hereinafter mentioned the President and Chief Executive Officer of the Defendant and directly engaged in the wrongdoing described below.

2.    That Jabro was an investor in the Defendant and was well-known to the Defendant. Jabro's business strategy at the time of the stock purchases and loans and issuance of notes at issue was to invest in publicly-traded, nano-cap companies whose securities are traded on the Over the Counter Bulletin Board, OTCQB and the "Pink Sheets." Nano-cap companies, such as the Defendant, are often capital-constrained, as their low market capitalization hinders their access to banks or investment firms. Jabro provides capital to such companies, as an investment in return for shares purchased at a discount to market price.

3.     That Jabro invested $76,500 in the Defendant by purchasing securities directly from the Defendant and making loans thereto and has sustained damages of $114,750 exclusive of attorney's fees, pre-judgment interest, costs and late fees.

## II.     JURISDICTION AND VENUE

4.     Defendants, directly and indirectly, singly or in concert, made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, or of the mails in connection with the acts, practices and courses of conduct alleged in this Complaint, certain of which occurred within the Eastern District of New York, such that jurisdiction exists in this state.

5.     That in addition, jurisdiction exists under 28 U.S.C. § 1332 as there is complete diversity between the parties and more than $75,000 is at issue exclusive of costs, fees and interest.

6.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b), because certain of the transactions, acts, practices, and courses of conduct constituting violations of duties occurred within this judicial district.  Additionally, Jabro transacts business and maintains its principal place of business in this district. That further, the Defendant has contractually agreed with Jabro to fix venue for any action in the State of New York, County of Nassau, which is within the Eastern District and the jurisdiction of this Court.  In addition, Ogburn is sufficiently connected with the Defendant and the transactions at issue, for which he was the signatory, so that he is likewise bound by the contractual venue and jurisdictional provisions contained in the Agreements.

7.     That in connection with the acts alleged in this Complaint, the Defendant directly or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

### III. PARTIES

8.     That at all times relevant herein, Jabro has been and remains a corporation organized and existing under the laws of the State of New York with an office for business in the County of Nassau, not engaged in the banking business, and is a citizen of the State of New York.

9.     That at all times relevant herein, the Defendant has been and remains a corporation organized and existing under the laws of the State of Wyoming, with an office for business in the State of Arizona and is a citizen of the State of Arizona.

10.     That at all times relevant herein, Ogburn has been and remains a resident of the State of Arizona and is a citizen of the State of Arizona.

### IV. FACTUAL ALLEGATIONS

11.     That heretofore and from time to time, the Defendant has made material misrepresentations of fact to Jabro, knowing that such misrepresentations were false, and upon which Jabro relied and was damaged.

12.     That as a result of these material misrepresentations, Jabro invested $76,500 in the Defendant and sustained damages thereby.

### AS AND FOR A FIRST CAUSE OF ACTION
### PROMISSORY NOTES DEFAULTS

13.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 12 of this Complaint with the same force and effect as if fully set forth at length herein.

14.     That on or about November 6, 2017, the Defendant as borrower, made, executed and delivered to the Plaintiff a convertible promissory note ("the November Note") in the amount of $76,500, which Note was issued pursuant to a Securities Purchase Agreement ("the November Agreement") of even date, which provided for certain issuance of, and conversion rights in and to the common stock of the Defendant.

15.   That both the November Note and the November Agreement provided that venue for any action between the parties would be the State of New York, County of Nassau.

16.   That the November Note provides in pertinent part that in the event that the Defendant shall fail to maintain the listing of its Common Stock on at least one of the over counter markets, or an equivalent replacement exchange, the Defendant shall be in material default of the Note and Agreement.

17.   That no portion of the Note has been paid through the conversion process or otherwise.

18.   That on April 12, 2018 the Securities and Exchange Commission de-listed the Common Stock of the Defendant and suspended the trading of same for the reasons set forth in its release number 83043, a copy of which is annexed hereto and incorporated herein.   In addition, a copy of the Order of Suspension of Trading is also annexed hereto and incorporated herein.

19.   That by virtue of the de-listing of its Common Stock, the Defendant fell into material default of its obligations under both Notes and Agreements.

20.   That as a result of these material defaults, Jabro's counsel caused a notice of default to be served upon the Defendant on April 17, 2018, a copy of which is annexed hereto and incorporated herein.

21.   That the Notes provide, in pertinent part, that the failure to maintain its Common Stock on an OTC market constitutes an event of default under Section 3.7, entitling the Plaintiff to recover 150% of the outstanding principal amount of each of the Notes together with accrued and unpaid interest and default interest.

22.   That the Defendant has caused damages to the Plaintiff in an amount equal to 150% of the principal balance of $76,500 or $114,750 in the aggregate, by failing to cure said default and Plaintiff is entitled to judgment in that amount, together with interest and default interest as set forth therein.

## AS AND FOR A SECOND CAUSE OF ACTION
### BREACH OF CONTRACT – LOST PROFITS

23.     Jabro repeats and realleges each and every allegation contained in paragraphs 1 through 22 of this Complaint with the same force and effect as if fully set forth at length herein.

24.     That as a direct result of the defaults of the Defendant and its failure to abide by its contractual obligations, Jabro has been deprived of, and continues to be deprived of, the opportunity to acquire and to sell the common stock of the Defendant at a profit, which profits have been irretrievably lost as the markets for the common stock can no longer be recreated.

25.     That by reason of the foregoing, Jabro is entitled to judgment in an amount to be determined by the Court and equal to the lost profits that Jabro would have realized had the stock been made available and delivered to Jabro in accordance with its Conversion Notices.

## AS AND FOR A THIRD CAUSE OF ACTION
### BREACH OF CONTRACT – LITIGATION EXPENSES

26.     Jabro repeats and realleges each and every allegation contained in paragraphs 1 through 25 of this Complaint with the same force and effect as if fully set forth at length herein.

27.     That the Note and Agreement provides that in the event of a dispute and/or litigation between the parties, the prevailing parties shall be entitled to recover all of its litigation expenses including reasonable attorney fees.

28.     That by reason of the foregoing, Jabro is entitled to a judgment against Defendant for the reasonable legal fees and litigation expenses paid or incurred in this action.

## AS AND FOR A FOURTH CAUSE OF ACTION – FRAUD

29.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 28 of this Complaint with the same force and effect as if fully set forth at length herein.

30.     That prior to entering into the transactions referred to above, the Defendant and Ogburn failed to divulge that the Defendant and a former CEO of the Defendant had been sued for fraud in connection with stock dealings and investments in the Defendant and also failed to reveal

that Ogburn and his wife had been sued for embezzlement in a case involving allegations of the illegal sale of unregistered stock among other items of wrongdoing.

31.    That the Defendant and Ogburn were under a duty to speak and to reveal these material facts, all of which should also have been revealed in the Defendant's SEC filings.

32.    That the Plaintiff entered into the transactions complained of and advanced the funds referred to above without any knowledge of such wrongdoing, and the Plaintiff would never have done so had it been aware of these allegations of wrongdoing as described above.

33.    That out of nowhere, and only a few months after receiving the funding from the Plaintiff, the SEC suspended the trading of the Defendant's stock based upon such wrongdoing and other matters, and had the Defendant and Ogburn not concealed the truth in deliberate fashion from the Plaintiff, the Plaintiff would never had advanced the funds at issue and would have sustained no damages whatsoever.

34.    That in April 2018, only months after the funding, the SEC publicly announced that they were closing trading by the Defendant. That this was part and parcel of a press campaign by the SEC to notify potential investors such as the Plaintiff of the risks associated with investing in the Defendant.

35.    That had the Plaintiff known of the truth of the business operations and past dealings and fraudulent history of the Defendant, Ogburn, and the prior CEO, the Plaintiff never would have engaged in the transactions complained of or advanced the funds at issue, such that the Plaintiff was defrauded by the Defendant and Ogburn.

36.    That by reason of the foregoing, Plaintiff demands judgment for the sum of $76,500 plus interest.

## AS AND FOR A FIFTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

37.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 36 of this Complaint with the same force and effect as if fully set forth at length herein.

38.     That at all times relevant herein, the Defendant was an insolvent corporation as its debts exceeded its assets and it was unable to pay its current expenses as they came due.

39.     That in the filings that the Defendant made with the SEC prior to its defaults, the Defendant admitted that it was an insolvent corporation both from a stand point of net worth and the stand point of income and expense.

40.     That at all times relevant herein, Ogburn was a director and/or officers of the Defendant and that as a result of the Defendant's insolvency, a fiduciary relationship came into being between the Plaintiff, as a creditor of the Defendant, and Ogburn.

41.     That Ogburn was therefore under a fiduciary obligation to use his best efforts and exercise his judgment and discretion to see to it that the assets of the Defendant would be utilized or made available for the benefit of the Plaintiff as a creditor of the Defendant.

42.     That Ogburn failed and refused to adhere to his fiduciary obligations or to honor the same and failed to use his efforts and judgment to make such assets available to the Plaintiff, thereby causing the Plaintiff irreparable financial harm.

43.     That by reason of the foregoing, Plaintiff demands judgment against Ogburn for the sum of $76,500 based on the cause of action of breach of fiduciary duty.

WHEREFORE, JABRO demands judgment against Defendants as follows:

(i)     For $114,750 on the First Cause of Action;

(ii)    For an amount of lost profits to be determined by the Court but not less than $114,750 on the Second Cause of Action;

(iii)   Awarding Jabro its reasonable legal fees and costs of litigation on the Third Cause of Action;

(iv)    For $76,500 on the Fourth Cause of Action;

(v)     For $76,500 on the Fifth Cause of Action; and

(vi)    Together with the costs and disbursements of this action, interest at the rate of default as set forth in the Notes; pre-judgment interest as provided by statute, and such other and further relief as the Court may deem just and proper.

Dated: Great Neck, New York
       May 1, 2018

NAIDICH WURMAN LLP

By:
      Richard S. Naidich, Esq. (RSN 4102)
      111 Great Neck Road, Suite 214
      Great Neck, NY 11021
      Telephone: 516-498-2900
      Facsimile: 516-466-3555
      Attorneys for Plaintiff –
      JABRO FUNDING CORP..

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION
**SECURITIES EXCHANGE ACT OF 1934**
**Release No. 83043 / April 12, 2018**

The Securities and Exchange Commission ("Commission") announced the temporary suspension, pursuant to Section 12(k) of the Securities Exchange Act of 1934 (the "Exchange Act"), of trading in the securities of Corix Bioscience, Inc. ("CXBS "), of Surprise, Arizona, at 9:30 a.m. EDT on April 13, 2018, and terminating at 11:59 p.m. EDT on April 26, 2018.

The Commission temporarily suspended trading in the securities of Corix Bioscience, Inc. because of questions that have been raised about the accuracy and adequacy of publicly disseminated information concerning, among other things, the company's assets and operations in Nevada. This information includes claims that CXBS holds a valid, state-issued export license in Nevada for growing, processing, and distributing industrial hemp. This order was entered pursuant to Section 12(k) of the Exchange Act.

The Commission cautions broker-dealers, shareholders, and prospective purchasers that they should carefully consider the foregoing information along with all other currently available information and any information subsequently issued by the company.

Further, brokers and dealers should be alert to the fact that, pursuant to Rule 15c2-11 under the Exchange Act, at the termination of the trading suspension, no quotation may be entered unless and until they have strictly complied with all of the provisions of the rule. If any broker or dealer has any questions as to whether or not he has complied with the rule, he should not enter any quotation but immediately contact the staff in the Division of Trading and Markets, Office of Interpretation and Guidance, at (202) 551-5777. If any broker or dealer is uncertain as to what is required by Rule 15c2-11, he should refrain from entering quotations relating to Corix Bioscience, Inc.'s securities until such time as he has familiarized himself with the rule and is certain that all of its provisions have been met. If any broker or dealer enters any quotation which is in violation of the rule, the Commission will consider the need for prompt enforcement action.

If any broker-dealer or other person has any information which may relate to this matter, they should immediately contact Laura M. Metcalfe, Assistant Regional Director, Denver Regional Office of the Securities and Exchange Commission, at (303) 844-1000.

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

April 12, 2018

IN THE MATTER OF     :
CORIX BIOSCIENCE, INC.   : **ORDER OF SUSPENSION**
            : **OF TRADING**
**File No. 500-1**      :

It appears to the Securities and Exchange Commission that there is a lack of current and accurate information concerning the securities of Corix Bioscience, Inc. ("CXBS") (CIK No. 0001433821) because of questions regarding the accuracy of assertions by CXBS, a Wyoming corporation whose principal place of business is listed as Surprise, Arizona, and by others, in current Internet postings available to investors concerning, among other things, the company's assets and operations in Nevada.  This information includes claims that CXBS holds a valid, state-issued export license in Nevada for growing, processing, and distributing industrial hemp. The company's common stock is quoted on OTC Link, operated by OTC Markets Group Inc., under the ticker symbol CXBS.

The Commission is of the opinion that the public interest and the protection of investors require a suspension of trading in the securities of the above-listed company.

THEREFORE, IT IS ORDERED, pursuant to Section 12(k) of the Securities Exchange Act of 1934, that trading in the securities of the above-listed company is suspended for the period from 9:30 a.m. EDT on April 13, 2018 through 11:59 p.m. EDT on April 26, 2018.

By the Commission.

Brent J. Fields
Secretary

# NAIDICH WURMAN LLP
### *Attorneys at Law*

RICHARD S. NAIDICH
KENNETH H. WURMAN

111 GREAT NECK ROAD, SUITE 214
GREAT NECK, NEW YORK 11021
TELEPHONE (516) 498-2900
FACSIMILE (516) 466-3555

BERNARD S. FELDMAN
ROBERT P. JOHNSON

_____

OF COUNSEL

April 17, 2018

## NOTICE OF DEFAULT

*VIA E-MAIL (michael@lwavecapital.com);*
*& FEDERAL EXPRESS*
Corix Bioscience, Inc.
6772 West Bell Road, Suite 110-471
Surprise, Arizona 85374
Attention: Michael Ogburn,
            Chief Executive Officer and President

### RE: Jabro Funding Corp. with Corix Bioscience, Inc.

Dear Mr. Ogburn:

As you know, Jabro Funding Corp. (the "Investor") made a loan to Corix Bioscience, Inc. (the "Company") and the Company executed, among other things one or more Convertible Promissory Note(s) (the "Note(s)"), which at present have aggregate outstanding principal balance of $76,500.00 prior to default. The Note(s) provide in pertinent part that the Company shall be in default if the Company fails to maintain the listing of the Common Stock on one of the enumerated equivalent exchanges. The Securities and Exchange Commission suspended trading of the Company's stock by Order dated April 12, 2018.

Based upon the foregoing, the Company is now in default under the Note(s). Demand is hereby made for the immediate payment as provided in the Note(s) of $114,750.00 (representing 150% of the remaining outstanding principal balances) together with Default Interest as provided for in the Note(s) (the "Default Amount"). Your failure to comply with the demand of this letter will result in the investor, exercising all rights under the Note(s). Additionally, should the Default Amount not be paid within 5 business days from the date of this letter, in addition to all the other rights and remedies available to it, the Investor shall in its sole discretion convert the Default Amount into equity as provided for in the Note(s).

Very truly yours,

Bernard S. Feldman
Of Counsel

BSF/amp
Cc: Jabro Funding Corp.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK                    Civil Action No.:

JABRO FUNDING CORP.,

Plaintiff,

-against-

CORIX BIOSCIENCE, INC. AND MICHAEL OGBURN,

Defendants.

**SUMMONS AND COMPLAINT**

**NAIDICH WURMAN LLP**
**ATTORNEYS FOR PLAINTIFF**
**111 GREAT NECK ROAD - SUITE 214**
**GREAT NECK, NEW YORK 11021**
**(516) 498-2900**

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

DATED: May 1, 2018                          Signature:_____
                                            Print: Richard S. Naidich, Esq.

Service of a copy of the within                  is hereby admitted.
Dated:                                      _____
                                            Attorney(s) for

PLEASE TAKE NOTICE

NOTICE            that the within is a (certified) true copy of an Order entered
OF ENTRY          in the office of the clerk of the within named Court on _____, 20_____.

NOTICE OF         that an Order of which the within is a true copy will be presented for
SETTLEMENT        settlement to the Hon. _____, one of the judges of
                  within named Court, at _____ on _____, 20_____ at
                  a.m.

DATED: Great Neck, New York
       May 1, 2018                          NAIDICH WURMAN LLP
                                            Attorneys for Plaintiff
                                            111 Great Neck Road - Suite 214
                                            Great Neck, New York 11021
                                            (516) 498-2900